***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
CALL, INC. d/b/a MEDFORCE,          :
                                    :           Civil Action No.11-3723 (FLW)
             Plaintiff,             :
                                    :
                                    :           **OPINION**
v.                                  :
                                    :
Advanced Health Media, LLC.,        :
                                    :
             Defendant.             :
_____:

**WOLFSON, District Judge**:

In the instant matter, Defendant Advanced Health Media, LLC, ("AHM" or "Defendant"), moves to dismiss Count VII, claim for tortious interference with prospective economic advantage and business relationship, of the First Amended Complaint (the "Complaint") filed by Plaintiff Call, Inc. d/b/a/ MedForce ("MedForce" or "Plaintiff"). Specifically, Plaintiff alleges, inter alia, that AHM tortiously interfered with its prospective economic advantage and business relations by unjustifiably accusing MedForce of infringing certain patents at issue in this case, at a time when AHM knew MedForce was seeking to sell its company and there were prospective buyers considering purchasing the business. The issue presented here is whether MedForce's allegations are sufficient to pass Rule 12(b)(6) muster, and based on the reasons set forth below, the Court answers in the affirmative. Defendant's motion is **DENIED**.

I.      **Background**

On this motion to dismiss, the Court will only recount relevant facts from the Complaint, and take them as true. MedForce is a full service communication company that develops customized programs for current marketing or clinical initiative in the pharmaceutical industry. (Am. Compl. ¶ 2). MedForce is located in Shewsbury, New Jersey, and is a division of Call, Inc., a Pennsylvania Corporation. Id. AHM, a Delaware corporation, has its principal place of business in New Jersey. (Id. at ¶ 3). While the nature of its business is unclear from the Complaint, AHM owns three specific patents: U.S. Patent No. 7,822,628; U.S. Patent No. 7,877,282; and U.S. Patent No. 7,774,221 (collectively the "Patents"). These Patents are the subject of this litigation.

On or about May 24, 2011, MedForce received a letter from Kurt Olander, counsel for AHM, asserting that "based on [AHM's] knowledge of MedForce's customer requirements and industry standards, [MedForce's Event planning software] is infringing on AHM's patents." The letter stated that AHM was willing to discuss licenses for MedForce and warned MedForce that if a resolution could not be reached, AHM would take further measures. (Id. at ¶¶ 3-4, 8).

On June 1, 2011, MedForce responded to AHM's letter requesting further information regarding the basis for AHM's claims of infringement. (Id. at ¶ 9). On June 23, 2011, MedForce received another letter from AHM setting forth the specific bases for claiming infringement., which are not relevant for the purposes of this motion, (Id. at ¶¶ 10-11). Importantly, the letter closed with a statement which stated, "in the event an agreement to amicably resolve this matter cannot be reached within the next two weeks,

AHM may initiate a patent infringement action in the United States District Court of the District of New Jersey." (Id. at ¶ 11).

At the same time it was receiving AHM's letters concerning infringement of the Patents, MedForce was engaging in discussions with several third-party businesses regarding a potential purchase of MedForce's company. These negotiations began prior to May 24, 2011, at the time when MedForce received AHM's first infringement letter. (Id. at ¶ 28). MedForce further alleges that Peter Collins, a Vice President of AHM, told a MedForce employee that he was aware that MedForce had "put a book together" and was "on the market." Id. at ¶ 30. In that regard, MedForce avers that AHM had prior knowledge that MedForce was in discussions for the sale of its company with other third parties, and AHM knew that MedForce would be required to disclose AHM's threats of litigation to those entities. (Id. at ¶¶ 29-30). MedForce claims that AHM acted on this knowledge and sent the letters in "bad faith, for the purpose of harming MedForce's prospective sale of its company, creating confusion, mistake, and deception among potential purchasers of MedForce, diverting prospective purchasers, and interfering with MedForce's prospective economic advantage and business relations . . . ." Id. at ¶ 32. More importantly, MedForce maintains that it is the only company to which AHM had sent the "threat letters," while AHM had indicated to MedForce that the entire industry of healthcare speaker meeting logistics infringe on the Patents. (Id. at ¶ 32).

According to MedForce, as a direct consequence of the disclosures to potential purchasers, at least one of those potential purchasers advised MedForce that it had been "put off by the AHM situation" and did not submit a bid to buy MedForce for that reason. (Id. at ¶ 33). The potential bidder further advised that it would be interested in bidding

again when AHM's threat was resolved.  Moreover, MedForce claims that a second potential bidder advised MedForce that it could not close the business deal which the infringement issue was looming.  Id.

As a result, MedForce brought the Complaint, alleging that AHM's letters were sent maliciously for the purpose of harming MedForce's prospective sale of its company. (Id. at ¶ 32).  In addition to its claim for tortious interference, MedForce also seeks for a declaratory judgment that it did not infringe on the Patents (Id. at ¶¶ 16, 19, 24).

AHM now moves to dismiss MedForce's claim for tortious interference (Count VII).

## II. DISCUSSION

### A. Standard of Review

Rule 8 (a) of the Federal Rules of Civil Procedure provides that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). The purpose of a complaint is to inform the opposing party and to inform the court as to the nature of the claim and defenses being asserted by the party as well as the relief being requested. Hemy v. Perdue Farms, Inc., 2011 U.S. Dist. LEXIS 137923, 12-15 (D.N.J. Nov. 30, 2011).

Under Rule 12(b)(6) of the Federal Civil Rules of Procedure, a claim or counterclaim should be dismissed "where it is certain that no relief could be granted under any set of facts that could be proved." Markowitz v. Northeast Land Co., 906 F.2d 100,103 (3d Cir. 1990). Courts reviewing a motion to dismiss must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. In doing so, they retired Conley v. Gibson, 355 U.S. 41, 45-46 (1957) which required a complaint not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim.  Conley, 355 U.S. at 45-46. Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 F.3d at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (quoting Twombly,

550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 2010 U.S. App. LEXIS 24347, 2010 WL 4840093, *8 (3d Cir., Nov. 29, 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. Even so, the Rule 8 pleading standard should be applied a similar amount of rigor in all civil actions. Church & Dwight Co. v. SPD Swiss Precision Diagnostics, 2010 U.S. Dist. LEXIS 133114, 6-7 (D.N.J. Dec. 16, 2010).

### B.  Tortious Interference

To properly plead a claim for tortious interference, plaintiff must sufficiently allege the following elements:

> (1) it had a continuing or prospective economic relationship, or a reasonable expectation of economic advantage; (2) the defendant knew of such a relationship or expectancy; (3) the interference and harm inflicted were done intentionally and with malice; (4) if not for the interference, it was reasonably probable that the plaintiff would have realized economic advantage; and (5) the plaintiff was injured as a result of the defendant's conduct.

Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751 (1989).

As an initial matter, the Court notes that Defendant does not challenge the first two elements of Plaintiff's claim.  Having independently reviewed the pleadings, the Court finds that MedForce has alleged sufficient facts to establish that it had a reasonable expectation

of economic advantage. Indeed, MedForce pleads that it was in pursuit of business since it was actively engaged in discussions with several parties regarding the sale of MedForce's business. Second, MedForce sufficiently alleges that Defendant had the requisite knowledge of expectancy. Specifically, it is alleged that Collins, AHM's Vice-President, told a MedForce employee that he was aware that MedForce had "put a book together" and was "on the market." (First Am. Compl. at ¶, 30).

The Court will assess the sufficiency of the allegations regarding the remaining elements.

### 1. Malice

To establish the third prong of tortious interference, Plaintiff has to allege that Defendant acted with "malice." Printing Mart, 116 N.J. at 756. Specifically, malice is one where a harm was inflicted intentionally and without justification or excuse. Id.; Church & Dwight, 2010 U.S. Dist. LEXIS 133114 at *18-19. The malice inquiry asks whether the conduct was sanctioned by the "rules of the game". Printing Mart, 116 N.J. at 756. In that connection, the New Jersey Supreme Court explained:

> In this area of the law the use of such expressions as conspire, unlawful, malicious, etc., has been criticized as beclouding judgment and clear thinking in the formulation of rules of liability. Yet a degree of generality in the criteria which will suffice to spell out liability in any given case of this kind is unavoidable. The essence of the cases in this field is that in adjudging whether what the defendant has done is actionable, i.e., not done in the exercise of an equal or superior right, the ultimate inquiry is whether the conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." In other words, was the interference by defendant "sanctioned by the 'rules of the game.'" There can be no tighter test of liability in this area than that of the common conception of what is right and just dealing under the circumstances. Not only must [a] defendant[']s[] motive and purpose be proper but so also must be the means.

Id. (citations and quotations omitted).

Here, Plaintiff alleges that AHM acted intentionally and maliciously by sending correspondence concerning the alleged patent infringement while Plaintiff was in negotiations with potential purchasers of MedForce's business. Plaintiff alleges that Defendant sent the correspondence in order to interfere with the sale of MedForce. To support the assertion of malice, Plaintiff avers that "[d]espite AHM's claim [in its letter to MedForce] that all currently competitive technologies in the domain of healthcare speaker meeting logistics infringe its patents, MedForce is unaware of any other company in the industry that has been accused of patent infringement by AHM." (First Am. Compl. at ¶ 32). Moreover, Plaintiff alleges that AHM sent MedForce the "threat letters" at a particular time when AHM knew that MedForce was negotiating with third parties for the sale of its company. Id. The Complaint further alleges that AHM acted intentionally in order to "creat[e] confusion, mistake, and deception among potential purchasers of MedForce, diverting prospective purchasers and [interfere] with MedForce's prospective economic advantage." Id. Based on these allegations, Plaintiff claims that Defendant's conduct is malicious.

In response to the allegations, Defendant cites Foxtons, Inc. v. Cirri Germain Realty to support its position that the exercise of its business judgment cannot be found as tortious interference. In Foxtons, the defendant realty company created a flyer advertising its willingness to take a 3% real estate sales commission as opposed to the 6% commission that Foxtons was charging its customers at the time. 2008 N.J. Super. Unpub. LEXIS 189, at *3-4 (App. Div. Feb. 22, 2008). The defendant "circulated" this flyer. Id. at *4. Although Foxtons was not named in the flyer, it brought suit for tortious interference. The court ruled against Foxtons, holding that "the fact that a party acted to advance its own interest

and financial position does not establish the necessary malice or wrongful conduct." Id. at *18.  In that respect, the court found that when a business targets a competitor's customers, it does not constitute tortious interference.  Rather, the court explained that the plaintiff failed to demonstrate that the conduct was not sanctioned by the "rules of the game."  The factual premise in Foxtons is clearly distinguishable from the case at bar.

Here, unlike in Foxtons, Defendant allegedly named and singled out Plaintiff, and unlike Defendant in Foxtons who circulated a flyer, MedForce has alleged that Defendant sent a letter of infringement directly to MedForce, knowing that MedForce was engaged in negotiations to sell its business, and that MedForce would be required to disclose to potential purchasers the information contained in the threat letters.  Indeed, the temporal proximity between MedForce's known efforts to sell the company and when it received the letters is highly suggestive of a malicious intent.  Contrary to Defendant's argument, whether Defendant acted with "malice," or acted pursuant to its business judgment, is an issue of fact, which cannot be resolved on a motion to dismiss.  Instead, the Court finds that the Complaint sets forth "enough factual matter (taken as true)… to raise a reasonable expectation that discovery will reveal evidence of the necessary element [of malice]." Phillips, 515 F.3d at 234 (citing Twombly, 550 U.S. at 556).

### 2. Anticipated Economic Benefit

In order to establish the fourth element of tortious interference, the plaintiff must sufficiently allege that there was a reasonable probability that without the interference, the plaintiff would have received the anticipated economic benefit. Printing Mart, 116 N.J. at 759-60.  Importantly, there need not be a contractual relationship between the victim and the third-party because "[t]he law protects [] a [person's] interest in reasonable

expectations of economic advantage." Id. at 750; Harris v. Perl, 41 N.J. 455, 462 (1964). However, a "mere allegation of lost business does not suffice." Eli Lilly Co v. Rouseel Corp., 23 F.Supp. 2d 460, 494 (D.N.J. 1998).

Challenging the sufficiency of this element, Defendant argues that Plaintiff's allegations of anticipated economic benefit from the potential purchasers are mere speculations. Along that line of reasoning, Defendant claims that Plaintiff must allege that absent AHM's interference, MedForce would have received the anticipated economic benefit. Defendant further maintains that Plaintiff fails to allege that MedForce was "at the stage of having a contract, or [] receiving a bid which could form the basis for entering into a contract, concerning the sale of its business . . . ." Def.'s Motion Brief at p. 10. This, Defendant claims, is fatal to Plaintiff's claim because the allegations, in sum, only highlight the speculative nature of the economic benefit. The Court disagrees.

First, the standard for the fourth prong of a tortious interference claim is clear: absent the interference, it was reasonably probable that plaintiff would have received the expected economic advantage. There is no legal requirement that MedForce must allege a contractual relationship with a third-party in order to state a claim of tortious interference. Printing Mart, 116 N.J. at 759-60. Rather, so long as the allegations contain sufficient information regarding a reasonable probability of anticipated economic benefits, the fourth element is satisfied. Based on the pleadings, the Court finds that Plaintiff has alleged sufficient facts to meet this standard.[1]

---

[1] The question as to whether, in fact, Plaintiff can prove the reasonable probability of anticipated economic benefits is a different question than whether it has sufficiently alleged the claim.

Plaintiff alleges that

> [a]s a direct consequence of these disclosures, MedForce's prospective economic advantage and business relations have been disrupted, and MedForce's business has suffered financial injury. Specifically, at least one potential bidder for MedForce has advised that it has been "put off by the AHM situation" and did not submit a bid for that reason.

(First Am. Compl. at ¶ 33).  Plaintiff explicitly avers that because of the threat letters and the disclosures thereof, MedForce's bidders were unwilling to submit bids.  Indeed, it is further alleged that the AHM infringement issue was the sole reason why at least two bidders did not submit bids.  Id. at ¶ 34 ("two bidders inform[ed] MedForce that the dispute with AHM was the reason they were not submitting bids.").  In fact, one potential bidder stated that it would be interested in submitting a bid when the AHM threat is resolved.  Id. at ¶ 33.  Clearly, then, there is nothing speculative about the type of economic benefits MedForce anticipated from a potential third-party purchaser.[2]  Requiring more would run afoul of the standard espoused by the New Jersey Supreme Court in Printing Mart.[3]  This element is pled sufficiently.

---

[2]  What is not known is the amount of the benefit, i.e., what the sale of MedForce's business would have realized.  That can be explored in discovery.  See section 3, Infra.

[3]  This Court is also not persuaded by Defendant's reliance on Eli Lilly and Co. v. Roussel Corp., 23 F. Supp.2d 260, 494 (D.N.J. 1998).  The court there found against plaintiff Eli Lilly because it failed to allege the existence of any "particular anticipated contract" with which the defendants interfered.  In that case, Eli Lilly brought suit against the defendants for fraudulently obtaining approval to market a drug.  In finding the plaintiff failed to sufficiently allege an anticipated economic benefit, the court reasoned that Eli Lilly merely alleged a "loss of business."  Unlike Eli Lilly, Plaintiff, here, has alleged more than the prospect of loss of business; rather, according to the Complaint, it had the specific "potential business relationships" required to satisfy the pleading requirement.

### 3. Injury

Having found that Plaintiff has sufficiently pled that it if not for AHM's malicious interference, MedForce would have successfully sold its company to a potential purchaser, the element of injury is easily satisfied. In order to successfully plead the existence of an injury, a plaintiff must allege that defendant's conduct has caused it injury, resulting in damages. Graco, Inc. v. PMC Global, Inc., 2009 U.S. Dist. LEXIS 26845, *69 (D.N.J. Mar. 31, 2009), citing Matrix Essentials, Inc. v. Cosmetic Gallery, Inc., 870 F. Supp. 1237, 1249 (D.N.J. 1994). At this stage, the damages sought need not be quantified with specificity.

Here, the Complaint alleges that at least two potential bidders have advised MedForce that the dispute with AHM is the reason they are not submitting bids. The loss of these potential bids demonstrates that MedForce suffered the type of economic harm contemplated by the claim for tortious interference. Contrary to Defendant's position, Plaintiff need not set forth in the Complaint a calculation of damages caused by the alleged interference. While Plaintiff does not specifically delineate the degree of harm that has been caused by Defendant's conduct, that type of specificity is not required at this pleading stage. Rather, Plaintiff's allegations that MedForce has suffered some harm as a result of the repudiation of bids by prospective buyers is sufficient.

**III.     Conclusion**

For the reasons set forth above, Plaintiff has state a claim for tortious interference based on the elements promulgated by <u>Printing Mart</u>.  Accordingly, Defendants' motion to dismiss Plaintiff's tortious interference claim is denied.


DATED:     March 29, 2012                          <u>/s/ Freda L. Wolfson</u>
                                                   Freda L. Wolfson, U.S.D.J.